**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**SHREVEPORT DIVISION**

| | |
|---|---|
| **ANDREW WHITE** | **CIVIL ACTION NO. 23-832-P** |
| **VERSUS** | **JUDGE HICKS** |
| **JULLIAN WHITTINGTON, ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

**REPORT AND RECOMMENDATION**

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

**STATEMENT OF CLAIM**

Before the court is a civil rights complaint filed in forma pauperis by pro se plaintiff Andrew White ("Plaintiff"), pursuant to 42 U.S.C. § 1983. This complaint was received and filed in this court on June 20, 2023. Plaintiff was incarcerated at the Bossier Maximum Security Facility in Plain Dealing, Louisiana, when he filed this complaint. Plaintiff names Jullian Whittington, Lt. Evans, Deputy Crook, Shift Sgt. Linton, C.O. Gilbert, and Shift Sgt. Normand as defendants.

On November 3, 2022, Plaintiff was booked into the Bossier Maximum Security Facility. He allegedly experienced seizure activity upon his arrival. During the medical intake, he informed Nurse April that he was supposed to take Dilantin 300 mg every day but had self-medicated while on the streets. On November 4, 2022, Plaintiff was moved from the top tier to the bottom tier and a bottom bunk because of the severity of his seizures and the need for medical staff to respond to his seizures.

Plaintiff states that on February 4, 2023, an incident happened between him and another inmate. He reported the sexual misconduct and harassment to prison officials. He claims a no contact order was placed on him and the other inmate and the Prison Rape Elimination Act went into effect.

Plaintiff gave a tablet to Deputy Dabelo on his final walk through of the day. He claims Deputy Dabelo returned the tablet back to him with orders to keep it until the following morning. The following morning, Plaintiff was shaken down and found to be in possession of the tablet. He claims Deputy/Sgt. Debalo set him up by returning the tablet to him.

On February 28, 2023, Plaintiff was sentenced to 48 hours of lockdown and loss of privileges. Plaintiff claims that on March 1, 2023, Lt. Evans reopened the matter and sentenced him to an additional 15 days of punishment and moved him to the E-Pod. He argues that reopening the matter violated his right against double jeopardy. Plaintiff claims C.O. Gilbert threatened to take his recreation time when he complained about his extended sentence and transfer to the E-Pod.

Plaintiff claims that on May 31, 2023, June 3, 2023, June 12, 2023, and June 13, 2023, hidden tablets were found by prison officials, and no other inmates suffered any consequences. He claims prison officials singled him out.

Plaintiff claims that on March 2, 2023, Deputy Gilbert told him to keep the noise down and threatened him. He claims his aggressor and his friends were the persons hollering threats and sexual remarks. He claims that during his recreation time, his

aggressor came to his door and verbally harassed him and made vulgar remarks and threats. He claims his aggressor had the pod join him as he faced his cell and yelled his name, blew kisses, and made heart signs, unwanted sexual advances, and comments.

Plaintiff claims that on March 4, 2023, he was subjected to more harassment. He reported the harassment to C.O. Gilbert. He claims that instead of correcting the situation, prison officials moved the aggressor from beside him to directly in plain view of him. He claims he was then exposed to the verbal threats and harassment at all times. He claims the situation became more stressful, humiliating, emotionally damaging, and degrading. He suffered damage to his pride, dignity, and emotional and mental state.

Plaintiff claims that on March 9, 2023, he had a severe seizure because of mental stress and anguish and lack of medication. He claims that when Nurse Sarah arrived, she was upset and questioned why he was not on the bottom tier. Nurse Sarah ordered that he be taken to the medical department immediately, but he was forced to lie in his own urine. Plaintiff's neck and back were in pain from his fall. He was given Tylenol and transported to the hospital by ambulance. He claims the doctors questioned why he had not been given the proper medication. At the hospital, Plaintiff was given IV seizure medication and pain medication.

Plaintiff claims that when he returned to the facility, he was heavily medicated and had a head injury. He claims that even though other housing options were available, Deputy Linton forced him into a cell that contained bloody gauze, blood, and rotten food. He begged Deputy Crook for help the entire night. He argues there were health risks and

possible dangers caused by the improperly cleaned cell. He claims he had previously filed a grievance against Deputy Linton, but nothing was done because it was not properly filed. He claims that when Mrs. Dunn came to his cell at breakfast, she saw the condition of his cell and immediately removed him. Mrs. Dunn had the trustees clean the cell before he was returned to it.

Plaintiff admits that on March 10, 2023, he was prescribed Dilantin for seizures.

Plaintiff claims that on March 15, 2023, Lt. Evans placed him in the E-Pod with his aggressor, and he was forced to endure another round of torture. He admits he was placed on the bottom tier with his appropriate housing restrictions.

Plaintiff claims that around March 17 or 18, 2023, he was returned to the G-Pod and all his property was returned to him. He claims rats had eaten $300.00 worth of his commissary purchases. He claims he was not reimbursed for his lost property.

Plaintiff also claims prison officials held his property so he could not eat between meals because he has an eating disorder caused by his enlarged spleen. He claims that when he eats, his stomach pushes against his spleen causing pain. He claims he ate what he could on his food trays and then fed himself if he became hungry. He was not allowed to store food from his trays. Plaintiff claims he either had to eat his entire tray or starve himself. He claims he was subjected to pain at every meal. He also claims he was tortured because he was given Depakote to help with weight gain and increase his body mass index.

Plaintiff claims he suffered from severe headaches, severe neck, back, and shoulder pain, numbness in his head and neck, severe depression and anxiety, blindness in his right

eye, and involuntary muscle spasms and jerking. He was diagnosed with a bulging disc in his back or neck, head trauma, depression, anxiety, and emotional trauma.

Plaintiff admits he received medical treatment on “a lot of … dates” but did not have access to his records [Doc. 6, p.6]. He admits he received counseling and saw a mental health doctor. He also admits he was placed on medication for nerve pain, involuntary muscle jerking, and weight gain. He also admits his seizure medications were changed to accommodate his other problems such as headaches [Doc. 6, p. 5].

On March 21, 2023, Nurse Kim saw Plaintiff in the infirmary for severe headaches, blindness in his right eye, and twitching. He claims Nurse Kim told him that his loss of sight was caused by hitting his head and should return. Nurse Kim placed him on the doctor’s list and gave him a ten-pack of Tylenol. Plaintiff claims Nurse Kim did not examine him or provide him with treatment [Doc. 6, p. 14].

On April 4, 2023, Dr. Lacoco saw Plaintiff in the infirmary for headaches, burning and numbness on top of his head and down his neck, and neck, back, and right shoulder pain. He claims Dr. Lacoco told him that his symptoms were caused by a bulging disc in his neck and nerve damage. He claims he was not examined or provided with treatment but admits he was prescribed Elavil for nerve pain and his seizure medication was changed to Lamotrigine to help with his headaches [Doc. 6, p.14].

On May 9, 2023, Plaintiff was seen by Dr. Lacoco in the infirmary for worsening muscle twitching. Plaintiff requested medication for his nerve pain because it had been discontinued for weeks because he complained. He claims he was told that he was falling

asleep too fast. He claims he was not examined but was prescribed Depakote, but at a lower dose than previously prescribed [Doc. 6, p.14].

Plaintiff admits that on May 19, 2023, he was placed on Depakote to help with mood stabilization and muscle spasms/jerking. Plaintiff admits that he was provided counseling with a mental health doctor but is unable to provide the dates because he does not have the medical records [Doc. 6, p. 7].

Plaintiff claims he requested other medications from Nurse Megan, but his requests were denied because the facility did not support those types of medications. He claims he was denied medications to help control his thoughts, sleep, nightmares, and panic and anxiety attacks. He claims Mental Health Doctor/Nurse Megan recommended him for therapy. He claims he should have received proper counseling and therapy described in the Prison Rape Elimination Act policy. He claims the facility refused the therapy that mental health requested. He claims he should have received higher doses of his medications. Plaintiff admits he was not physically injured by his alleged aggressor [Doc. 6, p. 21].

Accordingly, Plaintiff seeks monetary damages and counseling.

## LAW AND ANALYSIS

### Heck Claims

Plaintiff claims that after being shaken down and found to be in possession of a tablet he was told to keep by Deputy Dabelo, he was found guilty of a disciplinary infraction. Plaintiff claims that on February 28, 2023, he was sentenced to 48 hours of

lockdown and loss of privileges. He claims that on March 1, 2023, he was sentenced to an additional 15 days of punishment.

Plaintiff is seeking monetary damages for allegedly unconstitutional disciplinary board convictions and sentences. The United States Supreme Court held that in order to recover damages for an allegedly unconstitutional conviction or sentence or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a prisoner must show that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas." Heck v. Humphrey, 512 U.S. 477, 486–87, 114 S.Ct. 2364, 2372 (1994).

Courts have also extended the holding in Heck to claims seeking injunctive or declaratory relief pursuant to 42 U.S.C. § 1983. See Edwards v. Balisok, 520 U.S. 641,648, 117 S.Ct. 1584, 1589, 137 L.Ed.2d 906 (1997); Clark v. Stalder, 154 F.3d 186, 190–91 (5th Cir.1998). Heck involved a civil rights claim brought by a state prisoner. The Court dismissed the Section 1983 suit until plaintiff could demonstrate that his conviction or sentence had been invalidated. In Edwards v. Balisok, supra, the Supreme Court approved the application of the Heck doctrine to prison disciplinary proceedings.

When a claim comes within the parameters of the Heck teachings, it is not cognizable under 42 U.S.C. § 1983 so long as the validity of the conviction or sentence has not been called into question as defined therein, which requires dismissal of claims not meeting its preconditions for suit. See Johnson v. McElveen, 101 F.3d 423, 424 (5th Cir.1996).

Plaintiff is seeking monetary damages for civil rights violations under Section 1983; therefore, he must prove that his disciplinary board convictions or sentences have been invalidated. He has not met this precondition, and his claims must be dismissed until such time that he can demonstrate that his disciplinary board convictions or sentences have been invalidated.

**Due Process in the Disciplinary Process Claims**

Plaintiff claims that when Lt. Evans reopened his disciplinary incident on March 1, 2023, and sentenced him to an additional 15 days of punishment, he violated his right against double jeopardy. To the extent Plaintiff contends he was punished without due process, that claim is not cognizable.

In Sandin v. Connor, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court clarified when due process protections attach to the prison disciplinary process. The Supreme Court held that the Due Process Clause of the Fourteenth Amendment does not afford an inmate a protected liberty interest that would entitle the inmate to procedural protections in the disciplinary process when the maximum sanction the inmate could receive does not "present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest" and the duration of the prisoner's original sentence is not affected. Id. 132 L.Ed.2d at 431. Under the guidance provided by Sandin, the Fifth Circuit has held that as a general rule, only sanctions which result in loss of good time credit, or which otherwise directly and adversely affect release will implicate a constitutionally protected liberty interest. Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995). Moreover, in commenting on Sandin, the Fifth Circuit noted that liberty interests

which are protected by the Due Process Clause are generally limited to actions which affect the quantity of time rather than the quality of time served by a prisoner. Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997) citing Sandin, 115 S.Ct. at 2297.

Plaintiff in the instant case does not allege that the disciplinary action affected the duration of his sentence. To the contrary, Plaintiff's allegations concern his sentence to extended lockdown and loss of privileges which is far from "extraordinary." This court finds that under Sandin, Orellana and Madison, a sentence of extended lockdown and loss of privileges does not constitute the type of atypical punishment that presents a significant deprivation which would implicate due process concerns.

Accordingly, Plaintiff's claims that he was punished without due process of law are without merit and should be dismissed with prejudice as frivolous.

**Classification Claims**

Plaintiff claims that on March 1, 2023, Lt. Evans transferred him to the E-Pod. He claims that on March 15, 2023, Lt. Evans placed him in the E-Pod.

The classification and housing of prisoners is such a practice that is left to the discretion of prison officials. See McCord v. Maggio, 910 F.2d 1248, 1250 (5th Cir.1990). "It is well settled that '[p]rison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status'." McCord. 910 F.2d at 1250 (quoting Wilkerson v. Maggio, 703 F.2d 909 (5th Cir.1983)). Thus, this court accords state prison administrators wide-ranging deference to adopt and to execute policies and practices that are needed to maintain and preserve order, discipline, and security in prison. See Bell v. Wolfish, 441 U.S. 520, 547 (1979).

In Louisiana, the classification of prisoners is the duty of the Department of Corrections and an inmate, such as Plaintiff, has no right to a particular classification. In addition, “speculative, collateral consequences of prison administrative decisions do not create constitutionally protected liberty interests.” Luken v. Scott, 71 F.3d 192, 193 (5th Cir.1995) (citing Meachum v. Fano, 427 U.S. 215, 299 n. 8, 96 S.Ct. 2532, 2540 n. 8 (1976)). Plaintiff has no right to challenge his place of incarceration.

Plaintiff has no constitutional right to any particular housing arrangement, so he cannot state a claim for damages under 42 U.S.C. § 1983.

Accordingly, Plaintiff's claims regarding his classification are frivolous because they lack an arguable basis in law and in fact, and they should be dismissed with prejudice as frivolous.

**Verbal Threats Claims**

Plaintiff claims Deputy C.O. Gilbert threatened to take his recreation time when he complained about his extended sentence. He also claims Deputy Gilbert told him to keep the noise down and threatened him.

The Eighth Amendment proscribes prison officials’ wanton infliction of unnecessary pain upon a prisoner. It has been held that verbal abuse and harassment do not constitute cruel and unusual punishment as contemplated by the Eighth Amendment and allegations of such, without more, are insufficient grounds for relief under 42 U.S.C. § 1983. Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979); Ellingburg v. Lucas, 518 F.2d 1196 (8th Cir. 1975). Furthermore, the Fifth Circuit Court of Appeals has held that "mere

threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations." Siglar v. Hightower, 112 F.3rd 191, 193 (5th Cir.1997); Lynch v Cannatella, 810 F.2d 1363, 1376 (5th Cir. 1987) citing McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir.), cert. den., 464 U.S. 998, 104 S.Ct. 499, 78 L.Ed.2d 691 (1983). Even if Plaintiff was subjected to verbal abuse and threats as alleged, these claims do not amount to harm sufficient to constitute a constitutional violation.

Accordingly, Plaintiff's claims should be dismissed as frivolous.

**Failure to Protect Claims**

Plaintiff claims that on March 2, 2023, his aggressor and his friends verbally harassed him and made vulgar remarks, threats, unwanted sexual advances, and comments. He claims that on March 4, 2023 and March 15 2023, he was subjected to more harassment.

The particular right protected under 42 U.S.C. § 1983 in matters which concern alleged inmate violence is the Eighth Amendment prohibition against cruel and unusual punishment. Under the Eighth Amendment, prison officials are required to provide humane conditions of confinement, ensuring that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of inmates. See Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970 (1994).

"It is not, however, every injury suffered by a prisoner at the hands of another that translates into constitutional liability for prison officials." Farmer, 114 S.Ct. at 1977. Instead, to prevail on a claim based on a failure to protect, the inmate must show that he is incarcerated "under conditions posing a substantial risk of serious harm" and that the defendant prison officials were deliberately indifferent to the inmate's health and safety.

Id. at 1977-78. The test for deliberate indifference is a subjective one. Thus, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of fact from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 1979.

In this case, after a thorough review of Plaintiff's complaint, read in a light most favorable to him, the court finds that the facts alleged do not support a finding of deliberate indifference. Plaintiff admits that he was not physically harmed. As previously discussed, verbal threats, without more, do not support a constitutional violation. See Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997); McFadden v. Lucs, 713 F.2d 143, 146 (5th Cir. 1983). As such, Plaintiff has not shown that Defendants disregarded a risk to his safety by failing to take reasonable measures to abate it. Farmer, 114 S.Ct. 1970.

Accordingly, Plaintiff's claims should be dismissed as frivolous.

**Medical Claims**

Plaintiff claims he was denied proper medical treatment.

Plaintiff filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities" by a person acting under color of state law. The particular right protected under 42 U.S.C. § 1983 in matters which concern alleged denial of or inadequate medical care is the Eighth Amendment prohibition against cruel and unusual punishment.

The lack of proper inmate medical care rises to the level of a constitutional deprivation under the Eighth Amendment of the United States Constitution only if the evidence shows that the prison officials showed "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976); See also Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978 (1994). It is only deliberate indifference, "an unnecessary and wanton infliction of pain" or an act "repugnant to the conscience of mankind," that constitutes conduct proscribed by the Eighth Amendment. Estelle, 429 U.S. at 105-06, 97 S. Ct. at 292; See also Gregg v. Georgia, 428 U.S. 153, 96 S. Ct. 2909 (1976). Further, the plaintiff must establish that the defendants possessed a culpable state of mind. See Wilson v. Seiter, 501 U.S. 294, 297-302, 111 S. Ct. 2321, 2323-27 (1991); Farmer, 511 U.S. at 838-47, 114 S. Ct. at 1979-84. A delay in medical care will violate the Eight Amendment only if the delay is based on deliberate indifference and results in substantial harm. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). In addition, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

In this case, after a thorough review of Plaintiff's complaint, read in a light most favorable to him, the court finds that the facts alleged do not support a finding of deliberate indifference to serious medical needs. To the contrary, the record demonstrates that Defendants were attentive to the medical needs of Plaintiff. It has been consistently held that an inmate who has been examined by medical personnel fails to set forth a valid showing of deliberate indifference to serious medical needs. Norton v. Dimazana, 122

F.2d 286, 292 (5th Cir. 1997); Callaway v. Smith County, 991 F. Supp. 801, 809 (E.D. Tex. 1998); Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). Plaintiff admits he received medical treatment on a lot of dates. He admits that on March 9, 2023, Nurse Sarah responded to his seizure, he was given Tylenol, and he was transported by ambulance to the hospital. He admits that at the hospital, he was given IV seizure medication and pain medication. He admits that on March 10, 2023, he was prescribed Dilantin for seizures. Plaintiff admits that on March 21, 2023, he saw Nurse Kim in the infirmary and was placed on the doctor’s list and given Tylenol. Plaintiff admits that on April 4, 2023, he saw Dr. Lacoco in the infirmary and was prescribed Elavil for nerve pain. Plaintiff admits that on May 9, 2023, he was seen by Dr. Lacoco in the infirmary and was prescribed Depakote. Plaintiff admits he was given Depakote for weight gain and increased body mass. He admits he received counseling and saw a mental health doctor. He also admits that he was placed on medications for nerve pain, headaches, bulging disc, involuntary muscle jerking, and weight gain. Plaintiff admits his seizure medicines were changed to accommodate his other problems such as headaches. Plaintiff’s complaint is devoid of factual allegations that would tend to show Defendants acted with a culpable state of mind or that their actions were "unnecessary and wanton."

Plaintiff disagrees with the treatment Defendants provided him. He claims he should have been given a bottom tier assignment, a different seizure medication, a proper diet instead of Depakote for his eating disorder, higher doses of medications, different medications, and proper counseling and therapy. As previously discussed, disagreement

with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs.

Plaintiff's allegations, if accepted as true, may amount to a state law claim for negligence, a tort. However, mere negligence, neglect or medical malpractice does not amount to a denial of a constitutional right as these actions on the part of Defendants do not rise to the level of a constitutional tort. See Daniels v. Williams, 474 U.S. 327, 329-30, 106 S. Ct. 662, 664 (1986); Estelle, 429 U.S. at 106, 97 S. Ct. at 292; Lewis v. Woods, 848 F.2d 649, 651 (5th Cir. 1988). The fact that Plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. See Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). Prisoners are not constitutionally entitled to the best medical care that money can buy. See Mayweather v. Foti, 958 F.2d. 91 (5th Cir. 1992).

Accordingly, Plaintiff's medical care claims should be dismissed with prejudice as frivolous.

**Conditions of Confinement Claims**

Plaintiff claims that when he returned from the hospital on March 9, 2023, Deputy Linton forced him into a cell that contained bloody gauze, blood, and rotten food. He admits the cell was cleaned the next morning.

The Constitution "does not mandate comfortable prisons," but conditions of confinement "must not involve the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 101 S.Ct. 2392, 2399–400 (1981). Prison officials must provide humane

conditions of confinement, ensuring that "inmates receive adequate food, clothing, shelter, and medical care...." Farmer v. Brennan, 114 S.Ct. 1970, 1976 (1994).

An inmate must satisfy two requirements to demonstrate an Eighth Amendment violation. First, the deprivation must be, objectively, sufficiently serious, meaning it resulted in the denial of the minimal civilized measure of life's necessities. Second, a prison official must have a sufficiently culpable state of mind, that being deliberate indifference to inmate health or safety. Palmer v. Johnson, 193 F.3d 346, 352 (5th Cir.1999).

The length of confinement should be considered in deciding whether the confinement meets constitutional standards. In Hutto v. Finney, 98 S.Ct. 2565 (1978), the Court stated that a filthy, overcrowded cell might be tolerable for a few days but intolerably cruel for weeks or months. The Fifth Circuit found that inmates kept in a filthy cell for only three days did not make out a violation. Davis v. Scott, 157 F.3d 1003 (5th Cir.1998).

The conditions alleged by Plaintiff are that he was placed in an improperly cleaned cell that contained bloody gauze, blood, and rotten food for one night. He also does not allege that any particular harm befell him because of the overnight conditions. After considering the totality of the circumstances, particularly the brief duration of the conditions, the undersigned finds that Plaintiff has not alleged facts that present a clearly established violation of the Eighth Amendment, although the conditions would have been undesirable and perhaps uncomfortable.

Accordingly, Plaintiff's conditions of confinement claims should be dismissed.

**Property Claims**

As previously discussed, Plaintiff filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities secured by the Constitution or laws of the United States" by a person acting under color of state law. Accordingly, the initial inquiry and threshold concern of the reviewing court is whether Plaintiff's constitutional rights have been violated. See Parratt v. Taylor, 451 U.S. 527, 107 S. Ct. 1908 (1981).

The property of which Plaintiff was allegedly deprived can constitute "property" within the meaning of the Due Process Clause of the Fourteenth Amendment and its loss is worthy of redress if the loss implicates constitutional rights. See id. at 542, 107 S. Ct. at 1916. However, the Fourteenth Amendment is not a font of tort law to be superimposed upon whatever systems may already be administered by the States. See Baker v. McCollan, 433 U.S. 137, 99 S. Ct. 2689 (1979). A constitutional deprivation of property without due process of law, as differentiated from a state tort law claim, must be intentional and plaintiff must allege specific facts which support such a conclusion.

Absent an intentional deprivation of property where the charge only supports a negligent failure by defendants, a constitutional deprivation does not lie. "[T]he Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty or property." Daniels v. Williams, 474 U.S. 327, 328, 106 S. Ct. 662, 663 (1986). Moreover, even in instances where intentional deprivation occurs where an adequate state post-deprivation remedy is available, the Due Process Clause is not implicated. See Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 3204 (1984), on remand, 744 F.2d 22 (4th Cir. 1984); Marshall v. Norwood, 741 F.2d 761, 764 (5th Cir.

1984). Mere assertions of intentionality are not enough in the absence of specific facts supporting the assertions and "even if the taking were intentional, the state could afford the [plaintiff] due process by providing a post-deprivation remedy for the redress of the unforeseeable, unauthorized injury... alleged." Lewis v. Woods, 848 F.2d 649, 652 (5th Cir. 1988). Louisiana law provides Plaintiff the opportunity to seek redress for his loss, whether intentional or negligent. See La. Civ. Code art. 2315.

Accordingly, Plaintiff has failed to state a claim cognizable under Section 1983.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed. See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact. See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Accordingly;

**IT IS RECOMMENDED** that Plaintiff's civil rights claims seeking monetary damages for his allegedly unconstitutional disciplinary convictions and sentences be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e) until such time as the Heck conditions are met. **IT IS FURTHER RECOMMENDED** that Plaintiff's

remaining civil rights claims be **DISMISSED WITH PREJUDICE** as frivolous and for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e).

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objection within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party. See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 26th day of August 2026.

Mark L. Hornsby
U.S. Magistrate Judge